IN THE MATTER OF THE APPLICATION OF IRVING BERLIN AND MAX DIAMOND, TRADING AS ARROW AMUSEMENT COMPANY, TO QUASH SEARCH WARRANT FOR ROOMS 1 AND 2, PREMISES 301-317 CLINTON AVENUE, NEWARK, NEW JERSEY.

Argued October 3, 1955—Decided October 31, 1955.

Mr. *George R. Sommer* argued the cause for respondents and cross-appellants, Irving Berlin and Max Diamond.

Mr. *Charles J. Tyne* argued the cause for defendants and respondents-appellants, New Jersey Law Enforcement Council and William F. Beegle (Mr. *James L. McKenna* and Mr. *James Rosen*, on the brief).

The opinion of the court was delivered by

WACHENFELD, J. This is an appeal from an order of the Essex County Court denying petitioners' motion to quash a search warrant and to return the property seized pursuant thereto. We granted certification prior to argument in the Appellate Division.

The search warrant involved was issued on January 12, 1955 upon an affidavit by William F. Beegle reciting that he was "a detective of the New Jersey State Police * * * assigned to investigate matters pertaining to the conduct of an unlawful lottery business in Essex County."

The warrant issued was a "John Doe" warrant directed to the "Sheriff, or any duly authorized law enforcing officer," and authorized him to search and seize "any and all lottery paraphernalia that the said John Doe may have upon his person," to enter the premises known as Rooms 1 and 2, 301-317 Clinton Ave., Newark, N. J., and there search and seize "any item or items, if any such be found or intended to be used for any lottery purpose or any other illegal purposes."

On January 14, 1955 Beegle executed the search warrant and seized numerous items located on the premises above described, all of which are set forth in an inventory annexed to the return to the warrant.

At the time the warrant was issued and when it was executed, Beegle was a member of the New Jersey State Police and was under assignment to the New Jersey Law Enforcement Council as an agent-investigator.

On July 1, 1953 the Law Enforcement Council was separated by act of the Legislature from the Department of Law and Public Safety and given a separate appropriation by the Legislature for the performance of its work. Since its inception, members of the New Jersey State Police have been assigned to the Council to assist it in performing the functions assigned to the Council by the Legislature. These men perform their duties as instructed by the Council and report to the Council the results of their work. They are paid by the State Police, but since the Council was separated from

the Department of Law and Public Safety, the Council reimburses the Division of State Police for the salaries and expenses of the officers so employed by it.

The petitioners, Irving Berlin and Max Diamond, were tenants of the premises wherein the search was made and they claim the property seized either belonged to them or they were the bailees thereof. They further contend the warrant was unlawfully issued and executed and that the property seized was not of the type of property described in the warrant. They filed a petition addressed to the judge of the Essex County Court who had issued the warrant, seeking to quash the search warrant and asking the court to enjoin Beegle and the Law Enforcement Council and others from using the articles seized in any proceeding before the grand jury or any court of this State and to return the property to them.

The court below adjudged: (1) that the search warrant was sufficient on its face; (2) that there was probable cause for its issuance; (3) that the execution of the warrant by Beegle as a member of the State Police was illegal and his seizure of the property was unlawful; and (4) that the property should not be returned or its use as evidence enjoined.

The Law Enforcement Council appeals from the court's conclusion No. 3, and the petitioners cross-appeal from the court's conclusions Nos. 1, 2 and 4. The appeal as to the first conclusion is not prosecuted but it is said the warrant was unlawfully issued in that the affidavit upon which it is based did not contain facts upon which to base a finding of probable cause that a law violation was being committed.

There is no merit to this contention. In his affidavit, Beegle recited that in the course of his investigation he observed the rooms on the second floor of the premises in question, the tenants of which were not listed on the building directory. Almost daily he observed there a number of men whom he recognized as connected with an unlawful lottery being carried on in the County of Essex. He described the activities of one of the operators and he saw one of the

petitioners, Berlin, who appeared to be in charge, in one of the rooms almost daily. Beegle also saw Berlin take out a large stack of bills from his desk, count it and hand money to persons in the room, and he found slips bearing lottery numbers torn into bits among the papers that bore Berlin's name and which apparently came from the room in question.

It is apparent from recognized authorities that in order to constitute probable cause a prosecutor need not necessarily have personal knowledge of the transaction of which he complains; he may rightfully act upon information communicated to him in the ordinary routine of common affairs, provided he honestly believes the information is true and is of such a character and communicated in such a manner as under similar circumstances it would be acted upon by an ordinarily prudent person. As was said in *Lane v. Pennsylvania R. Co.*, 78 *N. J. L.* 672, 674 (*E. & A.* 1910):

"In cases of criminal prosecutions, 'probable cause' means reasonable grounds for suspicion, supported by circumstances sufficiently strong in themselves to warrant an ordinarily cautious man in the belief that the accused is guilty of the offense with which he is charged."

See also *Spencer v. Anness*, 32 *N. J. L.* 100, 101 (*Sup. Ct.* 1866).

If the facts submitted in the instant case were not sufficient cause for granting a search warrant, such warrants would become obsolete for failure of usage.

Although these adjudications and their implications are admitted, it is suggested they should be invalidated in favor of the stricter federal rule as set forth in *Nathanson v. United States*, 290 *U. S.* 41, 54 *S. Ct.* 11, 78 *L. Ed.* 159 (1937), and to this end the doctrine of *stare decisis* should not fetter our courts in their progress nor prove to be a judicial idol blinding us to a more enlightened view.

An identical endeavor based upon the same reasoning was undertaken in *State v. Alexander*, 7 *N. J.* 585 (1951), where we disposed of the issue in language equally applicable here:

528

"No convincing thought or reason has been suggested warranting us in discarding a rule of constitutional construction which has for many years demonstrated its practical worth and its soundness in the administration of justice in this jurisdiction. Our new judicial system has for its cornerstone the discovery of truth wherever possible, without infringement upon constitutional rights or privileges. The abandonment of the present practice, in our opinion, would be a step backward and inimical to the public good."

Next, the petitioners question the authority of a member of the State Police to lawfully execute a search warrant. It is contended that while State Police are empowered by statute to execute "any lawful warrant or order of arrest," see *N. J. S. A.* 53:2–1, the Legislature has withheld from them the power to execute search warrants, presumably under the maxim, *expressio unius est exclusio alterius.*

■ Although we are unable to find in New Jersey any general rule or statute which designates those who may execute search warrants issued out of the County Court, analogous statutes and rules do confer similar and even greater authority on peace officers. Thus, *N. J. S.* 2A:8–16 provides:

"Any peace officer or other person authorized by law shall and may lawfully act in the execution of any and all summonses, warrants, subpoenas and processes whatever issued by any municipal court or magistrate."

And again, *R. R.* 3:2–2(c), which regulates criminal practice in the superior and county courts, in referring to warrants of arrest reads:

"(c) *Execution or Service; Return.*
(1) *By Whom.* The warrant shall be executed and summons served by any peace officer or other person authorized by law."

The analogy furnished by the statutes and the rules, plus the broad jurisdiction of the County Courts in criminal matters authorizing the execution of warrants for arrest by any peace officer or other person authorized by law, and the practice in vogue over these many years, compel us to the

conclusion that a peace officer is by law authorized to execute a search warrant issued by a County Court.

Members of the State Police are specifically classified by the Legislature as "peace officers of the State," having "in general the same powers and authority as are conferred by law upon police officers and constables." *N. J. S. A.* 53:2–1. In the face of this broad description of the powers and functions of State Police officers, we cannot infer that the Legislature intended to withhold from them any power or function which might properly be exercised by "peace officers," "police officers and constables."

But the Legislature went even further; the same statute confers upon the State Police the "power to prevent crime, to pursue and apprehend offenders and *to obtain legal evidence* necessary to insure the conviction of such offenders in the courts." (Italics supplied) Obviously the Legislature, in conferring power upon the State Police "to obtain legal evidence," must have had in mind the execution of search warrants, the traditional means by which such evidence is obtained.

Having so concluded, we come to the real core of the controversy, whether the warrant was lawfully executed inasmuch as Beegle, although a member of the State Police, at the time in question was employed by the Law Enforcement Council.

As was noted in the opinion below, the Council was created for the sole purpose of critically and objectively examining into all phases of law enforcement and was not established or authorized by law to be a law enforcement unit endowed with police powers. A bare reading of the statute, *N. J. S. A.* 52:17B–43.5 *et seq.*, suffices to support that view.

So much is conceded, for the Council acknowledges it has no right to make searches and seizures. The court below concluded that Beegle, who was acting as agent for the Council when executing the warrant in question, had lost his identity as a member of the State Police on being assigned to the Council and could have no greater authority than his

principal. It therefore concluded the search and seizure which he made were unlawful.

The Council insists, however, that although Beegle was acting as an agent of the Council, he nevertheless remained an officer of the New Jersey State Police and as such was entitled by law to execute search warrants. It cites the old maxim, "once a policeman, always a policeman," and sets forth *dictum* from the recent case of *State v. Borrell*, 18 *N. J.* 16, 21 (1955), to the effect that a policeman's obligations are never recessed but are continuous and constant.

Admittedly, in actual practice the state troopers assigned to the Council also report to the Division of State Police the number of hours they have worked, the number of miles traveled, the number of investigations made, and in the event of arrests, they file detailed reports of the arrests and the offenses.

Additionally, the assignment of the state troopers to the Council does not in any way deprive them of any tenure, rights or protection afforded them under the Civil Service Law or under any pension or retirement system. *N. J. S. A.* 52:17B–43.8.

The logical inference from the enumerated incidents indicates no intention to divorce Beegle from his status as a member of the State Police and to totally isolate him within the agency he was to assist. Rather, there is clearly the implication that Beegle's assignment to the Council was temporary and that his status as a state policeman was to be retained so he would suffer no detriment by the change in his work assignment.

In the act defining the duties and functions of the Law Enforcement Council, the Legislature also specifically provided (*N. J. S. A.* 52:17B–43.9):

"Any and all persons engaged in law enforcement in the State, in any capacity, shall, upon request by the council * * * render to the council such assistance as it may require in the performance of its duties."

Beegle clearly was within the class of persons upon whom the Council could call in fulfilling its duties in seeking

evidence of crime, and in rendering assistance to the Council he retained his status as a law enforcement officer. His assignment to the Law Enforcement Council did not deprive him of any of his peace functions; indeed, the power he possessed as such was presumably within the contemplation of the Council in securing his services. To hold otherwise would limit the assistance he could render to a minimum never intended by the statutory enactments and would be contrary to the legislative provision which directs cooperation amongst the agencies and authorizes the lending of personnel by one to the other. *N. J. S. A.* 52:14–2.

In this view it is unnecessary to determine the asserted right to a return of the goods taken where the search warrant is quashed for invalidity.

The judgment below, for the reasons herein stated, is reversed in so far as it holds the execution of the warrant in question to have been illegal, and in all other respects it is affirmed.

No costs.

*For modification*—Chief Justice VANDERBILT, and Justices HEHER, OLIPHANT, WACHENFELD, BURLING, JACOBS and BRENNAN—7.

*Opposed*—None.